# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ZI QIANG ZHANG,              :

    Petitioner,              :

vs.                          :     CA 07-0189-KD-C

DAVID O. STREIFF, et al.,    :

    Respondents.

## REPORT AND RECOMMENDATION

Zi Qiang Zhang, a native and citizen of China ordered removed from the United States and presently being detained by the Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date, because Zhang prematurely filed the

---

[1] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

present attack upon his post-removal-period detention by approximately three months.

## **FINDINGS OF FACT**

1. Zhang is a native and citizen of China who initially entered the United States on June 4, 1993 without inspection. (Doc. 8, Decision to Continue Detention) Petitioner was served with a show cause order on June 7, 1993 and was charged under § 241(a)(1)(B) of the Immigration and Nationality Act. (*Id.*) Zhang applied for asylum on July 26, 1993; however, on February 8, 1994, an Immigration Judge denied all of petitioner's applications for relief and ordered him deported from the United States *in absentia*. (*Id.*)

2. Zhang was taken into ICE custody on February 13, 2006 (Doc. 8, at 2; *see also* Doc. 1, at 3-4 ("Back in February 2006, DHS-ICE took action to have Petitioner placed into detention under federal custody at the Bergen County Jail, Sussex County Jail in the State of New Jersey.")); on that same date, ICE submitted a presentation packet to the Consulate General of China in New York requesting the issuance of a travel document (Doc. 8, Decision to Continue Detention). On April 12, 2006, ICE received a valid travel document to facilitate Zhang's removal from the United States and repatriation to China. (*Id.*; *see also* Doc. 8, PERMIT FOR ENTRY ("This permit is valid

within three months from the date of issuance, for the bearer to return to China only."))

3. On April 28, 2006, Zhang filed a motion to reopen removal proceedings. (Doc. 8, WRITTEN DECISION OF THE IMMIGRATION JUDGE) A stay of removal was granted by the Executive Office of Immigration Review that same date. (Doc. 8, Decision to Continue Detention)

4. On May 31, 2006, Immigration Judge Robert D. Weisel denied Zhang's motion to reopen his removal proceedings. (Doc. 8, WRITTEN DECISION OF THE IMMIGRATION JUDGE)

> Section 240(b)(5)(C) of the Act provides that an *in absentia* removal order may be rescinded by the Immigration Judge only:
>
>> (i) upon motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances [as defined in INA § 240(e)(1)], or
>>
>> (ii) upon a motion filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 239(a) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.
>
> INA § 240(b)(5)(C). Section 240(e)(1) of the Act defines "exceptional circumstances" as circumstances beyond the control of the alien, such as serious illness of the alien or death

> of an immediate relative of the alien, but not including less compelling circumstances.
>
> This Court is satisfied the Respondent received proper notice of his hearing. Respondent's assertion that he did not receive notice of the hearing held on February 9, 1994 is contrary to the record. The court's Record of Proceeding contains not only a copy of a Notice of Hearing sent certified mail to his prior counsel, but also contains a copy of a follow-up letter from his attorney reiterating the hearing date mailed to the respondent. Respondent's mention that he will be marrying his girlfriend is not a cognizable or prima facie basis for asylum. The respondent has also not included an application for political asylum with his motion as required by the regulations and pointed out by the government.

(*Id.*) The Board of Immigration Appeals affirmed the Immigration Judge's decision on August 22, 2006. (Doc. 8, PER CURIAM ORDER)

> The respondent failed to appear for his hearing on February 8, 1994. He was ordered to be deported in absentia. More than 12 years later, he submitted a motion to reopen. He claimed that he never met the attorney of record and that he was completely unaware of the hearing date. The Immigration Judge found that the notice was properly served on the respondent's counsel. He noted that the record included a letter to the respondent from his counsel informing him of the hearing date and the consequences of a failure to appear, which was returned as undeliverable. The Immigration Judge appropriately denied the respondent's motion to reopen. We note that the Immigration Judge cited the statute applicable to removal proceedings, 8 U.S.C. § 240(b)(5)(C), instead of the statute applicable to these deportation proceedings, 8 U.S.C. §242B(c)(3). However, no prejudice occurred as the standard is the same. The respondent claims on appeal that he cannot prepare a brief because he has not been given a transcript of the proceedings or an opportunity to listen to the tapes of the proceedings. However, there is no indication

> the proceedings were held that were taped or transcribed. Due to the respondent's failure to appear, there is only an in absentia order in the record. Accordingly, the appeal is dismissed.

(*Id.*)

5. On September 18, 2006, Zhang filed a petition for review with the Second Circuit Court of Appeals. (Doc. 8, PETITION FOR REVIEW; *see also id.*, Docket Sheet) Concurrent therewith, petitioner filed a motion for stay of deportation/removal. (Doc. 8, Docket Sheet) Petitioner withdrew his appeal, without prejudice to reinstatement, on December 15, 2006. (*Id.*)

6. Zhang filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on March 9, 2007. (Doc. 1) In his petition, Zhang seeks his immediate release from detention on the basis that his prolonged detention is unconstitutional in light of *Zadvydas, infra*, and the discretionary detention provisions of 8 U.S.C. § 1231(a)(6). (*See id.*, at 1-3, 5 & 8)

## **CONCLUSIONS OF LAW**

1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.      The Supreme Court held in *Zadvydas* that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.      8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)    Detention, release, and removal of aliens ordered removed**

   **(1)    Removal period**

      **(A)    In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

      **(B)    Beginning of period**

The removal period begins on the **latest** of the following:

         **(i)** The date the order of removal becomes administratively final.

         **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the

> removal of the alien, the date of the court's final order.
>
> **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
> **(C)   Suspension of period**
>
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> **(2)   Detention**
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably
7

foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

     4.     In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under

*Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

     5.     In this case, Zhang has filed his § 2241 petition prematurely. Petitioner's filing date in this instant action, March 9, 2007 (Doc. 1), came approximately six months after the Second Circuit Court of Appeals granted

Zhang's stay of removal pending determination of the petition for review and only approximately three months after petitioner withdrew his appeal. In accordance with *Zadvydas, Akinwale* and the removal statute, 8 U.S.C. § 1231, Zhang has had, at best, a three month period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court. Accordingly, the six-month period has not expired and petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Zi Qiang Zhang's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Zhang's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of June, 2007.

  s/WILLIAM E/ CASSADY
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND **FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                s/WILLIAM E. CASSADY
                                                                UNITED STATES MAGISTRATE JUDGE